UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

HENRY A. TERRY,                          )
                                         )
        Plaintiff,                       )
                                         )
    v.                                   )        No.   1:13CV150 TIA
                                         )
CAROLYN W. COLVIN,                       )
Commissioner of Social Security,         )
                                         )
        Defendant.                       )

## MEMORANDUM AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

This cause is on appeal from an adverse ruling of the Social Security Administration. The suit involves an Application for Disability Insurance Benefits under Title II of the Social Security Act. Claimant has filed a Brief in Support of his Complaint, and the Commissioner has filed a Brief in Support of her Answer. The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

## I.      Procedural History

On May 26, 2010, Claimant Henry A. Terry filed an Application for Disability Insurance Benefits under Title II of the Act, 42 U.S.C. §§ 401 et. seq. (Tr. 135-41).[1] Claimant states that his disability began on January 10, 2003, as a result of back and feet pain, high cholesterol, joint pain, high blood pressure, blastomyces dermatitidis, pneumonia, swollen lymph nodes, pain in left arm, allergies, right leg numbness, breathing problems, and allergies. (Tr. 82,175). On initial consideration, the Social Security Administration denied Claimant's claims for benefits. (Tr. 82-

---

[1]"Tr." refers to the page of the administrative record filed by the Defendant with her Answer (Docket No. 18/filed March 18, 2014).

87).  Claimant requested a hearing before an Administrative Law Judge ("ALJ").  On June 19, 2012, a hearing was held before an ALJ.  (Tr. 37-78).  Claimant testified and was represented by counsel.  (Id.).  Vocational Expert Dr. John McGowan also testified at the hearing.  (Tr. 73-77, 131-32).  Thereafter, on July 13, 2012, the ALJ issued a decision denying Claimant's claims for benefits.  (Tr. 20-32).   After considering the representative's brief, the Appeals Council found no basis for changing the ALJ's decision on August 8, 2013.  (Tr. 2-5, 214-15).  The ALJ's determination thus stands as the final decision of the Commissioner.  42 U.S.C. § 405(g).

## II.     Evidence Before the ALJ

### A.  Hearing on June 9, 2012

#### 1.  Claimant's Testimony

At the hearing on June 19, 2012, Claimant testified in response to questions posed by the ALJ and counsel.  (Tr. 37-73).  At the  time of the hearing, Claimant was fifty-five years of age.  (Tr. 43).  He is right-handed and lives with his wife and three children and two grandsons.  (Tr. 44).  He has a valid driver's license and has medical insurance through United Health Care.  (Tr. 45-46).  He has an associate's degree in electronics.  (Tr. 46).

Claimant testified that he worked at Proctor & Gamble for twenty-six years and stopped working in 2003 as an electronics and instrumentation technician after being offered an early out.  (Tr. 47, 50).  He helped repair the lines when there was an electrical problems by troubleshooting and lifted motors weighing 150 pounds.  (Tr. 47-48).  Claimant explained how he has not submitted any applications for work since 2003, because he deals with his twenty rental properties.  (Tr. 49).  He visits the properties as needed such as when there is a problem or to collect rent.  (Tr. 55).  He does not have a manager for the properties.  (Tr. 55). Claimant makes

calls to schedule repairs at the properties.  (Tr. 56).

Claimant testified he experienced constant back pain caused by wearing a twenty-pound tool pouch in 2003.  (Tr. 51).  His doctors prescribed pain killers as treatment, but he experienced no relief.  (Tr. 52).  Manipulation treatment by Dr. Ruopp, a chiropractor, relieved his pain temporarily.  (Tr. 52).  Claimant testified that Dr. Ruopp still treats him on an as-needed basis. (Tr. 54, 71).

Claimant testified that he can load and unload the dishwasher, make the bed, pay bills on the computer, visit family in Louisville, Kentucky, attend church, do simple household repairs, and go fishing for a short period of time.  (Tr. 57-63).  He serves as a Sunday school teacher. (Tr. 72).  In 2008, he had problems doing anything for a long period of time.  (Tr. 69).  He can lift his grand children, but he cannot hold them very long.  (Tr. 70).

Claimant testified that he is allergic to spring and olive trees, ragweed, and house dust. (Tr. 62-63).  He injured his back in a motor vehicle accident and sustained a disc pressing on the nerve in his lower back.  (Tr. 65).  He has flat feet.  (Tr. 66).  He takes medication as treatment for his high blood pressure and the last reading showed his blood pressure to be 110/78.  (Tr. 67). Claimant testified that he has to lie down for one to three hours each day.  (Tr. 71)

### 2.  Testimony of Vocational Expert

Vocational Expert Dr. John McGowan testified at the hearing.  (Tr. 73-77).  Dr. McGowan identified Claimant's vocational history as an electronic equipment repairer ro production repairer, heavy skilled work.  (Tr. 74).

The ALJ asked Dr. McGowan to assume that

a person of the age of 52, with a high school plus education, and the past relevant

work experience as you have identified. Please assume I would find the person capable of performing the exertional demands of light work as defined in the Social Security regulations. Specifically a person who can lift, carry, push, pull 20 pounds occasionally, 10 pounds frequently; sit, stand, walk six out of eight, for a total of eight out of eight; the person would be limited to occasional stoop, occasional crouch, occasional kneel, and occasional crawl, occasional exposure to ladders, ropes, and scaffolds. Lastly, the person is limited to no concentrated exposure to dust, fumes and gases. Per that hypothetical, would there be any transferable work skills to apply.

(Tr.73-75). Dr. McGowan indicated he could not identify any jobs at the light level that would make use of that skill, and such restrictions would affect the performance of past relevant work (Tr. 75). Dr. McGowan opined such an individual could work as a hospital products assembler with 1,500 available in Missouri and 26,400 available nationally; and an electronic equipment final assembly inspector with 400 jobs available in Missouri and 18,270 nationally. (Tr. 76).

some cashiering work, a light and unskilled job with at least 6.000 jobs in Missouri and over 300,000 jobs available nationally; and some work as an usher, light and unskilled with 1,000 jobs available in Missouri and over 50,000 available in the national economy. (Tr. 95).

Claimant's counsel asked Dr. McGowan the following:

Assume a person of the same age, which is 52, work history and experience as the claimant. Assume that according to Exhibit 14F, the lower extremity questionnaire completed by Dr. Bieser on 6-7-2012. that the person would have moderately severe, which is defined by -- as an impairment that seriously affects the ability to function, moderately severe pain, and that this pain would interfere with their ability to maintain attention and concentration to sufficiently complete tasks in a timely manner frequently, which is 34 to 66 percent of the time; and that they would be unable to stand and walk six out of eight hours a day, and that this would keep them from being able to work more than two days a month. Would they be able to do their past work?

(Tr. 76-77). Dr. McGowan responded no such individual could not perform any work. (Tr. 77).

### 3. Forms Completed by Claimant

In the Disability Report - Field Office, the DDS interviewer noted how Claimant in his application reported having self employment for 2009 and 2010 as a property manager. (Tr. 163-65, 184-85).

In the Work History Report, Claimant reported working as a technician from November 1976 through January 2003. (Tr. 166-73).

In the Disability Report - Adult, Claimant reported he stopped working on January 10, 2003 because of his conditions. (Tr. 174-83).

In the Function Report - Adult, Claimant reported his daily activities as reading, paying bills, returning calls, making appointments, scheduling follow-up work, picking up workers, giving workers schedules, overseeing work completed, showing properties, executing leases, doing exit inspections, scheduling repair work and maintenance, collecting rent payments, eating dinner, reading mail, and taking medications. (Tr. 187). He cares for his wife who has a brain tumor and takes her to doctors appointments. (Tr. 188). He takes the children to school and attends school meetings and goes to the grocery store. (Tr. 188). He explained he does not do any house or yard work, because he is "tired from running around with workers for rental property, maintenance and being on feet long time." (Tr. 190). He does the grocery shopping twice a week. (Tr. 190). His social activities are attending church, overseeing rental work, and using the computer for work. (Tr. 191). Claimant has orthotics for his shoes. (Tr. 193).

In the August 12, 2010 Case Analysis, Kristine Hartman noted how "there is insufficient medical evidence to determine disability before DLI of 12/31/2008, based on the records in file." (Tr. 199). In the Work Activity Report, he listed his business to be Terry Rental Properties, LLC.

(Tr. 207). His duties include showing vacant properties and deciding the order of projects to be completed, and he spends one to two hours a day and sometimes no time at all. (Tr. 207). He decides when to schedule service repairs for the rental properties. (Tr. 208).

## III. Medical Records and Other Records

To obtain disability insurance benefits, Claimant must establish that she was disabled within the meaning of the Social Security Act not later than the date her insured status expired - December 31, 2008. Pyland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998) ("In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status."); see also 42 U.S.C. §§ 416(I) and 423(c); 20 C.F.R. § 404.131.

On February 17 and 25, and March 8, 2004, Dr. Jack Ruopp of Ruopp Chiropractic treated Claimant for back pain and stiffness. (Tr. 296). On January 7 and 20, March 31, April 8 and 11, and June 1, 2005, Dr. Ruopp treated his neck pain. (Tr. 295-96).

On April 19, 2004 , Dr. Daniel Bieser treated Claimant at the Mount Auburn Medical Group. (Tr. 217, 508). He complained of foot pain and swelling. Dr. Bieser noted he has flat feet and his orthotics were last adjusted four years earlier. Claimant was in a motor vehicle accident in September and has been treated by Dr. Jack Ruopp, a chiropractor and a massage therapist, but he is still experiencing stiffness and soreness in his neck. Examination showed cervical range of motion right rotation is restricted to 45 degrees backward bending, and extension restricted to 40 degrees. Dr. Bieser found he has no radicular symptoms of flexion, and his lungs to be clear. Dr. Bieser diagnosed him with cervical strain, hypertension, and flat feet and referred him to Dr. Zenon Duda for treatment of his flat feet. In follow-up treatment on May 4, he reported receiving physical therapy at Southeast Missouri Hospital for cervical strain and

finding this has benefitted him. Dr. Duda gave him a heel injection and evaluated him for orthotics. Dr. Bieser recommended that Claimant continue physical therapy treatment. (Tr. 217, 508).

During treatment on January 5, 2005, Claimant reported being retired and having possible sinus and left ear infections. (Tr. 218, 503). Respiratory examination showed clear to auscultation and percussion and normal respiratory effort. (Tr. 219, 505). Dr. Bieser diagnosed him with sinusitis and prescribed zithromax. (Tr. 219, 504).

On February 10, his chief complaints included nose bleeds, headache, sore throat, and ear ache. (Tr. 221, 499). Respiratory examination showed clear to auscultation and percussion and a normal respiratory effort. (Tr. 223, 501). Dr. Bieser diagnosed him with acute sinusitis and prescribed Levaquin. (Tr. 223, 501). Claimant returned on March 10 for "follow up blood work which he did not get done." (Tr. 225, 496). He reported no longer having back problems. (Tr. 225, 496). Respiratory examination showed clear to auscultation and percussion. (Tr. 226, 497).

On September 2, 2005, he returned to follow up on lab work and reported a spot on his left eye, but he has no other concerns. (Tr. 228, 492). Retired is listed as his occupation. (Tr. 229, 493). Respiratory examination showed clear to auscultation and normal respiratory effort. (Tr. 229, 493). Dr. Bieser provided management treatment of his cholesterol and lipids. (Tr. 230, 494).

On referral by Dr. Bieser, Dr. Walter Schroeder evaluated his left lateral canthal lesion and recommended surgical excision of the mass of the left lateral canthal region and the lesion on his right leg. (Tr. 231-32, 489-91). The pathology report revealed a benign cyst and a benign dermatofibroma. (Tr. 233).

In follow-up treatment on November 4, Dr. Bieser counseled him regarding regular cholesterol screening and treated his mixed hyperlipdemia. (Tr. 234-35, 483-84). Respiratory examination showed clear to auscultation and percussion and normal respiratory effort. (Tr. 235, 484).

On February 13, 2006, Claimant returned for treatment by Dr. Bieser and complained of being congested even though he takes an allergy medication. (Tr. 237, 468). Dr. Bieser found his respiratory to be clear to auscultation and percussion. (Tr. 238, 469). His diagnosis included mixed hyperlipdemia and chronic rhinitis, and Dr. Bieser prescribed Singulair. (Tr. 239, 470). On February 24, he sought treatment for his sinus problems, and he reported feeling better after taking Levaquin. (Tr. 241, 464). Retired is listed as his occupation. (Tr. 242, 465). Respiratory examination showed no shortness of breath, hemoptysis, or wheezing. (Tr. 242, 465). Dr. Bieser prescribed Levofloxacin for his acute maxillary sinusitis and referred him to Dr. Duda for treatment of his right ankle pain and occasional swelling. (Tr. 243, 466).

On March 7, Dr. Duda treated Claimant for foot swelling. (Tr. 514). Dr. Duda noted "[h]e has been sometime ago in Paris at that time he was employed by Procter & Gamble and now he is involved in property management." (Tr. 514). Dr. Duda casted him for orthotics and noted how he had used orthotics in the past with a good result in 2001. (Tr. 514-15).

In follow-up treatment on August 29, 2006 for hypercholesterolemia, he denied other symptoms except for HPI. (Tr. 244-45, 459-60). Dr. Bieser found his blood pressure has worsened and decided to start medication for better control and counseled him regarding regular blood pressure checks and regular sustained exercise for at least 30 minutes three to four times a week. (Tr. 246, 461). Dr. Bieser found his elevated cholesterol has improved and continued his

medication regimen.  (Tr. 246, 461).

On September 29, 2006, Dr. Bieser checked his blood pressure.  (Tr. 248, 456).
Respiratory examination showed no shortness of breath, hemoptysis, or wheezing.  (Tr. 248,
456).  Dr. Bieser found his blood pressure to be unchanged, continued his medication regimen,
and recommended he check his blood pressure at home and call the office with the results.  (Tr.
249, 457).  Dr. Bieser found his respiratory to be clear to auscultation and percussion.  (Tr. 250,
458).

On January 9, 2007, he returned to Dr. Bieser's office after missing a step and landing on
his left knee and twisting both ankles.  (Tr. 452).  Dr. Bieser observed his gait to be intact and his
station, posture to be normal.  (Tr. 453).  The x-ray showed left knee to be within normal limits.
(Tr. 451).  Claimant reported his knee is starting to feel better and having a lot of sinus drainage
during treatment on January 23.  (Tr. 448).

On June 22, 2007, Dr. Bieser treated Claimant for a possible spider bite.  (Tr. 443).
Retired is noted as his occupation.  (Tr. 444).  Dr. Bieser prescribed Keflex as treatment.  (Tr.
445).

In follow-up treatment on January 30, 2009, Claimant reported sinus problems, ear ache,
sore throat, and drainage.  (Tr. 250, 434). Respiratory examination revealed clear to auscultation
and percussion.  (Tr. 251, 435).  Dr. Bieser prescribed Amoxicillin for his acute maxillary
sinusitis.  (Tr. 251, 435).

On April 23, 2009 Dr. Bieser treated him for his cough and fever.  (Tr. 253, 430).
Musculoskeletal examination revealed no muscle or joint pain, stiffness, swelling, or inflammation;
and no restriction of motion or atrophy.  (Tr. 253, 430).  Dr. Bieser found his essential

hypertension to be improved and prescribed Amoxicillin as treatment of his acute bronchitis. (Tr. 255, 432). On May 15, he reported a spot on left leg biopsied. (Tr. 256, 428). Dr. Bieser obtained a biopsy and sent the biopsy to pathology. (Tr. 256, 428).

On June 3, 2009, he sought treatment for a possible spider bite and a persistent cough. (Tr. 258, 422). Musculoskeletal examination revealed no muscle or joint pain, weakness, stiffness, swelling, or inflammation. (Tr. 259, 423). Dr. Bieser prescribed Keflex as treatment of carbuncle and furuncle of his leg and ordered a CXR as treatment of allergic rhinitis. (Tr. 259-60, 423-24).

The June 9, 2009 CXR and CT scan of his chest showed alveolar infiltrate RLL and RML and narrowing of bronchus and possible infrahilar mass density. (Tr. 261, 339, 416). Dr. Musa Wadi at the Pulmonary Clinic of Southeast Missouri Hospital evaluated his cough. Claimant reported cough starting after a trip to Houston and not responding to several courses of antibiotics and aggravated by exposure to dust, fumes, or vapors and to allergens. (Tr. 261, 339, 416). He reported having a college education and being self-employed. (Tr. 340). Immunology showed environmental allergies to dust and cigarette smoke. (Tr. 263, 341). Respiratory examination showed lungs clear to percussion. Dr. Wadi ordered a bronchoscopy and biosies under fluro to be done. (Tr. 263). The June 16 test results showed negative for malignancy and acute inflammation. (Tr. 265). Dr. Wadi prescribed Zithromax for treatment of his spider bite and gave samples of Advair as treatment. (Tr. 266, 336-38, 412-14).

In the August 10, 2009 treatment note, Claimant reported being self-employed and having a college education. (Tr. 333-35, 403-05).

In treatment on August 19, 2009, Claimant reported being bitten by a spider in May after

he cleaned out a shed containing brown recluse spiders.  (Tr. 276, 400).  Retired is listed as his occupation. (Tr. 277, 401).  Respiratory examination showed clear to auscultation and percussion.  (Tr. 277, 401).  In treatment on September 10, he reported feeling much better and no coughing and starting on Sporonax.  (Tr. 279, 330-33, 396-97).  Self-employed is listed as his employment status.  (Tr. 279, 331, 397)

On December 8, 2009, Dr. Wadi treated his cough.  (Tr. 282, 327, 393).  Respiratory examination showed his lungs to be clear to auscultation and percussion.  (Tr. 283, 328, 394).

In the February 23, 2010 treatment note from Pillar Chiropractic Centre, Claimant reported having lower back pain for about a month.  (Tr. 293).  Dr. Jack Ruopp treated him on May 11 and 21, 2010.  (Tr. 299).

In follow-up treatment on March 2, 2010, Dr. Bieser noted he has no cough, no shortness of breath, and no wheezing.  (Tr. 285-86, 389-90).  Dr. Bieser observed his gait to be intact and station, posture to be normal.  (Tr. 285-86, 389-90).

In the June 2 and 18, 2010 treatment notes, Claimant reported being self-employed, and Dr. Wadi found his breath sounds to be equal and clear to auscultation bilaterally without wheezes, rales, or rhonchi.  (Tr. 321-26).  On the June 21, 2011, he reported having fume exposure when he went fishing.  (Tr. 553).  In June 22, 2011 treatment note, Claimant reported being self-employed.  (Tr. 560-62).

On July 14, 2010, Claimant returned for casting for orthotics as treatment of his pes planus and plantar fasciitis.  (Tr. 513).  Dr. Duda noted how he had "been treated for this before with good results."  (Tr. 513).  Dr. Duda casted for his devices inasmuch as the last orthotics were fabricated four years ago.  (Tr. 513).

Dr. Bieser completed a Lower Extremities Questionnaire in check-box format on June 7, 2012. (Tr. 563-64). Dr. Bieser classified Claimant's pain in his lower extremities as moderately severe and found his impairment would seriously affect his ability to function. (Tr. 563). Dr. Bieser opined Claimant's pain would affect his ability to concentrate about 34%-66% of the time. (Tr. 563). Dr. Bieser found Claimant could not stand six hours out of an eight hour workday, and he would miss work more than two days a month. (Tr. 564). Dr. Bieser checked yes in response to the question, "[h]ave the patient's symptoms and limitations existed at the same or similar degree of severity since 12/31/2008?" (Tr. 564).

In the December 13, 2011 treatment note, Dr. Wadi noted how Claimant has been noncompliant in using the CPAP, because he experiences mask problems. (Tr. 557).

## IV.     The ALJ's Decision

The ALJ found that Claimant last met the insured status requirements of the Social Security Act on December 31, 2008, and he has not engaged in substantial gainful activity during the period from his alleged onset date of January 10, 2003 through his date of last insured of December 31, 2008. (Tr. 25). The ALJ found that through the date of last insured, Claimant has the following severe impairments: pes planus, plantar fasciitis, lumbar spondylosis, chronic rhinitis, and allergies, but no impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 26). The ALJ found through the date of last insured Claimant had the residual functional capacity to perform light work except he could only occasionally stoop, kneel, crouch, and crawl, and he could occasionally climb ladders, ropes, and scaffolds, but he could not tolerate concentrated exposure to pulmonary irritants. (Tr. 26). The ALJ found through the date of last insured, he was unable

to perform any past relevant work.  (Tr. 30).  His birth date is September 27, 1956 so he is

defined as an individual closely approaching advanced age.  Claimant has at least a high school

education, and he is able to communicate in English.  (Tr. 30).  The ALJ found through the date

of last insured, considering his age, education, work experience, and residual functional capacity,

there are jobs existing in significant numbers in the national economy he could have performed

including a hospital products assembler and electronic equipment final assembly inspector.  (Tr.

31).  The ALJ found he has not been disabled within the meaning of the Social Security Act at any

time from January 10, 2003, the alleged onset date , through December 31, 2008, the date of last

insured.  (Tr. 31).

## V.      Discussion

    In a  disability insurance benefits case, the burden is on the claimant to prove that he or

she has a disability.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).  Under the

Social Security Act, a disability is defined as the "inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  Additionally, the

claimant will be found to have a disability "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot,

considering his age, education and work experience, engage in any other kind of substantial

gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A) and

1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

    The Commissioner has promulgated regulations outlining a five-step process to guide an

ALJ in determining whether an individual is disabled. First, the ALJ must determine whether the individual is engaged in "substantial gainful activity." If she is, then she is not eligible for disability benefits. 20 C.F.R. § 404. 1520(b). If she is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant is not found to have a severe impairment, she is not eligible for disability benefits. If the claimant is found to have a severe impairment the ALJ proceeds to step three in which he must determine whether the impairment meets or is equal to one determined by the Commissioner to be conclusively disabling. If the impairment is specifically listed or is equal to a listed impairment, the claimant will be found disabled. 20 C.F.R. § 404.1520(d). If the impairment is not listed or is not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the claimant is capable of doing past relevant work. If the claimant can still perform past work, she is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform past work, the ALJ proceeds to step five in which the ALJ determines whether the claimant is capable of performing other work in the national economy. In step five, the ALJ must consider the claimant's "age, education, and past work experience." Only if a claimant is found incapable of performing other work in the national economy will she be found disabled. 20 C.F.R. § 404.1520(f); see also Bowen, 482 U.S. at 140-41 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole." Pearsall, 274 F.3d at 1217. Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Id. The court's review

"is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court will affirm the Commissioner's decision as long as there is substantial evidence in the record to support his findings, regardless of whether substantial evidence exists to support a different conclusion. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative record and consider:

1.    The credibility findings made by the ALJ.

2.    The claimant's vocational factors.

3.    The medical evidence from treating and consulting physicians.

4.    The claimant's subjective complaints relating to
       exertional and non-exertional activities and impairments.

5.    Any corroboration by third parties of the
       claimant's impairments.

6.    The testimony of vocational experts when required which
       is based upon a proper hypothetical question which sets forth the claimant's
       impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting

Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The ALJ's decision whether a person is disabled under the standards set forth above is conclusive upon this Court "if it is supported by substantial evidence on the record as a whole." Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. 2009) (quoting Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008)). "Substantial evidence is less than a preponderance but is enough that a

reasonable mind would find it adequate to support the conclusion." Wiese, 552 F.3d at 730 (quoting Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004)). When reviewing the record to determine whether the Commissioner's decision is supported by substantial evidence, however, the Court must consider evidence that supports the decision and evidence that fairly detracts from that decision. Id. The Court may not reverse that decision merely because substantial evidence would also support an opposite conclusion, Dunahoo v. Apfel, 241 F.3d 1033, 1037 (8th Cir. 2001), or it might have "come to a different conclusion." Wiese, 552 F.3d at 730. Thus, if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, the [Court] must affirm the agency's decision." Wheeler v. Apfel, 224 F.3d 891, 894-95 (8th Cir. 2000). See also Owen v. Astrue, 551 F.3d 792, 798 (8th Cir. 2008) (the ALJ's denial of benefits is not to be reversed "so long as the ALJ's decision falls within the available zone of choice") (internal quotations omitted).

Claimant argues that the ALJ failed to give the proper weight to the opinion of his treating physician, Dr. Robert Bieser. Claimant also contends that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ failed to properly assess his credibility and formulate his RFC.

A. **Weight Given to Treating Doctor**

The undersigned finds that the ALJ considered Dr. Daniel Bieser's opinion set forth in the two-page attorney-commissioned Lower Extremities Questionnaire and gave little weight to his opinion in his written opinion as follows:

> The undersigned has given this opinion little weight. First, Dr. Bieser's own notes from the claimant's alleged onset date through his date of last insured, taken with those of the podiatrist, Dr. Duda, demonstrate that the claimant's symptoms in his

feet and ankles were controlled with orthotics. There is no indication the claimant has had any nerve root involvement from his alleged spinal impairment that affects his lower extremities or ability to ambulate. While Dr. Bieser indicates the claimant's impairments have frequently interfered with his ability to maintain attention and concentration sufficient to complete tasks in a timely manner, the claimant admitted he has never required mental health treatment and Dr. Bieser makes no mention of this in his progress notes. The claimant is able to use a computer to pay bills, he reads, and he also teaches Sunday school. It is worth noting that Dr. Bieser indicates the claimant has not had swelling of the lower extremities, which contradicts the claimant's testimony that this limited his ability to function in the workplace. Even though the undersigned has considered Dr. Bieser's opinion as to the claimant's limitations for the entire period at issue, it appears that Dr. Bieser [is] addressing only the claimant's limitations since his date of last insured and there is no medical findings or documentation to support this day. There is no traumatic event or other reason, other than the fact that this is the claimant's date last insured.

(Tr. 30).

In the instant case, the record includes notes of his last visit to Dr. Bieser on November 9, 2011 before he completed the Lower Extremities Questionnaire on June 7, 2012- a series of check marks and x marks to assess the limitations of Claimant. A checklist format and conclusory opinions, even of a treating physician, are of limited evidentiary value. Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010); Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. 2009). In Wildman, the Eighth Circuit held that the ALJ had properly discounted a treating physician's assessment as conclusory when that "opinion consist[ed] of three checklist forms, cite[d] no medical evidence, and provide[d] little to no elaboration." 596 F.3d at 964. Further, Dr. Bieser's "check-off form" medical source questionnaire appears to have been procured and submitted by counsel. The questionnaire did not cite any clinical tests results or findings and was inconsistent with the physician's previous treatment notes. Id.; Holstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001) ("[T]he checklist format, generality, and incompleteness of the assessments limit their

evidentiary value."). Further, the lack of support in his own treatment notes for the functional limitations is underscored by his failure to provide reasons for his conclusion. In <u>Perks v. Astrue</u>, 687 F.3d 1086, 1092 (8th Cir. 2012), the Eighth Circuit Court of Appeals noted that it has "previously held that '[p]hysician opinions that are internally inconsistent . . . are entitled to less deference than they would receive in the absence of inconsistencies.'" (quoting <u>Guilliams v. Barnhart</u>, 393 F.3d 798, 803 (8th Cir. 2005)) (alterations in original).

"A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" <u>Tilley v. Astrue</u>, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. §404.1527(d)(2) (alteration in original). "[W]hile a treating physician's opinion is generally entitled to substantial weight, such an opinion does not automatically control because the [ALJ] must evaluate the record as a whole." <u>Wagner v. Astrue</u>, 499 F.3d 842, 849 (8th Cir. 2007) (internal quotations omitted). Thus, "'an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record.'" <u>Id.</u> (quoting <u>Prosch v. Apfel</u>, 201 F.3d 1010, 1013-14 (8th Cir. 2000)).

A treating physician's opinion may be, but is not automatically, entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2). Controlling weight may not be given unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. SSR 96-2P, 1996 WL 374188 (July 2, 1996). Even a well-supported medical opinion will not be given controlling weight if it is inconsistent with other substantial evidence in the record. Id. "The record must be evaluated as a whole to determine whether the treating physician's opinion should

control." <u>Tilley</u>, 580 F.3d at 679. When a treating physician's opinions "are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight." <u>Halverson v. Astrue</u>, 600 F.3d 922, 930 (8th Cir. 2010( (quoting <u>Krogmeier v. Barnhart</u>, 294 F.3d 1019, 1023 (8th Cir. 2002)). "A treating physician's opinion does not automatically control, since the record must be evaluated as a whole." <u>Perkins v. Astrue</u>, 2011 WL 3477199, *2 (8th Cir. 2011) (quoting <u>Medhaug v. Astrue</u>, 578 F.3d 805, 815 (8th Cir. 2009)). The ALJ is charged with the responsibility of resolving conflicts among the medical opinions. <u>Finch v. Astrue</u>, 547 F.3d 933, 936 (8th Cir. 2008).

Additionally, Social Security Ruling 96-2p states in its "Explanation of Terms" that it "is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record." 1996 WL 374188, at *2 (S.S.A. July 2, 1996). SSR 96-2 clarifies that 20 C.F.R. §§ 404.1527 and 416.927 require the ALJ to provide "good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s)." <u>Id.</u> at *5.

Although a treating physician's opinion is often given "controlling weight," such deference is not appropriate when the opinion is "inconsistent with other substantial evidence." <u>Renstrom v. Astrue</u>, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting <u>Perkins v. Astrue</u>, 648 F.3d 892, 897 (8th Cir. 2011)). The record as a whole in this case, including the inconsistencies in Dr. Bieser's treatment notes and his questionnaire and the medical evidence on record, casts doubt on his assertions set forth in the Lower Extremities Questionnaire.

First, the ALJ acknowledged that Dr. Bieser was a treating source, but that his opinion

was not entitled to controlling weight, because it is inconsistent with the objective medical evidence in the record.  See Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007) ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.").  As noted by the ALJ, the treatment notes of Dr. Duda show that the symptoms in his feet were controlled with orthotics.  The ALJ also noted how Dr. Bieser's treatment notes reflect Claimant did not have any swelling of the lower extremities.  With respect to the alleged inability to concentrate, the ALJ found Dr. Bieser's opinion is inconsistent with his own treatment notes inasmuch as he never found such limitation during treatment.  Further, the undersigned notes how Dr. Bieser last treated Claimant six months before completing the Lower Extremities Questionnaire at the request of counsel, but he did not report the conditions and symptoms that he claims render him totally disabled.  The undersigned notes no examination notes accompanied the  questionnaire.  Opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data. Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995); 20 C.F.R. § 404.1527(d)(3) (providing that more weight will be given to an opinion when a medical source presents relevant evidence, such as medical signs, in support of his or her opinion).

Second, Dr. Bieser's opinion is inconsistent with his clinical treatment notes.  Davidson v. Astrue, 578 F.3d 838, 842 (8th Cir. 2009).  "It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes," id., or when it consists of conclusory statements, Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010).  See also Clevenger v. S.S.A., 567 F.3d 971, 975 (8th Cir. 2009) (affirming ALJ's decision not to follow opinion of treating physician that was not corroborated by treatment notes); Chamberlain

v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995) ("The weight given a treating physician's opinion is limited if the opinion consists only of conclusory statements.").  Dr. Bieser's opinions are not supported by his treatment notes and are conclusory.  See McCoy v. Astrue, 648 F.3d 605, 617 (8th Cir. 2011) (rejecting claimant's challenge to lack of weight given treating physician's evaluation of claimant's mental impairments when "evaluation appeared to be based, at least in part, on [claimant's] self-reported symptoms, and, thus, insofar as those reported symptoms were found to be less than credible, [the treating physician's] report was rendered less credible.").  An ALJ may "discount or even disregard the opinion of a treating physician ... where a treating physician renders inconsistent opinions that undermine the credibility of such opinions."  Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000); Hackler v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight is not given to the RFC assessment).  The ALJ properly accorded Dr. Bieser's opinions in the questionnaire little weight inasmuch as his findings were inconsistent with, and unsupported by, the evidence of record.  See Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007) ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.") (citation and internal quotation omitted).   A review of his treatment notes shows he never imposed any functional limitations or any work restrictions on Claimant. See Fischer v. Barnhart, 56 F. App'x 746, 748 (8th Cir. 2003) ("in discounting [the treating physician's] opinion, the ALJ properly noted that ... [the treating physician] had never recommended any work restrictions for [the claimant]").  Indeed, the undersigned notes in follow-up treatment on August 29, 2006, Dr. Bieser counseled him regarding regular sustained exercise for at least 30 minutes three to four times a week.  Dr.

Bieser's treatment notes do not reflect the degree of limitation he noted in his June 7, 2012 questionnaire. The relevant lack of supporting evidence includes the absence of any restrictions placed on Claimant by Dr. Bieser during his treatment of him. See Teague v. Astrue, 638 F.3d 611, 615 (8th Cir. 2011). The undersigned concludes that the ALJ did not err in affording little weight to Dr. Bieser's opinions of June 7, 2012.

Furthermore, treatment has controlled Claimant's impairments: the symptoms of his feet were controlled with orthotics. Although Dr. Bieser found his cervical range of motion right rotation is restricted to 45 degrees backward bending, and extension restricted to 40 degrees, he found he has no radicular symptoms, and Claimant reported receiving physical therapy for the cervical strain and finding this has benefitted him. Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) ("An impairment which can be controlled by treatment or medication is not considered disabling.").

Further, no examining physician in any treatment notes stated that Claimant was disabled or unable to work or imposed mental limitations on Claimant's capacity for work. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant that no examining physician submitted medical conclusion that claimant is disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987) (examining physician's failure to find disability a factor in discrediting subjective complaints). The absence of objective medical basis to support Claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints. Renstrom, 680 F.3d at 1065; Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995)(lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994)(the ALJ was entitled to find

that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints). Thus, the ALJ did not err in giving slight weight to his opinions set forth in the questionnaire. Renstrom, 680 F.3d at 1065 (ALJ properly gave treating physician's opinion non-controlling weight when that opinion was largely based on claimant's subjective complaints and was inconsistent with other medical experts). As such, the undersigned finds that the ALJ gave proper weight to Dr. Bieser's opinions.

The undersigned finds that the ALJ's determination is supported by substantial evidence on the record as a whole. "It is not the role of [the reviewing] court to reweigh the evidence presented to the ALJ or to try the issue in this case de novo." Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. 2009) (citation omitted). "If after review, [the court] find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the denial of benefits." Id. (quoting Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996)). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

**B.** **Residual Functional Capacity and Credibility Determination**

Claimant contends that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ failed to give proper weight to his testimony in determining the RFC.

A claimant's RFC is what he can do despite his limitations. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001). The claimant has the burden to establish his RFC. Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). The ALJ determines a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005); Eichelberger, 390 F.3d at 591; 20 C.F.R. § 404.1545(a). The ALJ is "required to consider at least some supporting evidence from a [medical professional]" and should therefore obtain medical evidence that addresses the claimant's ability to function in the workplace. Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001) (internal quotation marks and citation omitted). An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand. Id.

The ALJ opined that Claimant through the date of last insured, Claimant had the residual functional capacity to perform light work except that he could only occasionally stoop, kneel, crouch, and crawl; and he could occasionally climb ladders, ropes, and scaffolds and could not tolerate concentrated exposure to pulmonary irritants.

In his decision the ALJ thoroughly discussed the medical evidence of record, his observations at the hearing, the routine and conservative treatment, the gap in treatment, activities of daily living, and inconsistencies in the record. See Gray v. Apfel, 192 F.3d 799, 803-04 (8th

Cir. 1999) (ALJ properly discredited claimant's subjective complaints of pain based on discrepancy between complaints and medical evidence, inconsistent statements, lack of pain medications, and extensive daily activities). The ALJ then addressed several inconsistencies in the record to support his conclusion that Claimant's complaints were not credible.

Specifically, the ALJ noted that no treating physician in any treatment notes stated that Claimant was disabled or unable to work or imposed mental limitations on Claimant's capacity for work. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant that no examining physician submitted medical conclusion that claimant is disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987) (examining physician's failure to find disability a factor in discrediting subjective complaints). The absence of objective medical basis to support Claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012); Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995)(lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994)(the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints).

Likewise, the ALJ noted how the medical evidence is devoid of any evidence showing that Claimant's condition has deteriorated or required aggressive medical treatment. Chamberlain v. Shalala, 47 F.3d 1489, 1495 (8th Cir. 1995) (failure to seek aggressive medical care is not suggestive of disabling pain); Walker v. Shalala, 993 F.2d 630, 631-32 (8th Cir. 1993) (lack of ongoing treatment is inconsistent with complaints of disabling condition). As noted by the ALJ,

Dr. Duda fitted Claimant for orthotics with good results.  Likewise, Claimant reported having his symptoms improved with physical therapy.  Thus the ALJ found that the medical record undermines Claimant's credibility concerning his allegations of disabling pain and disabling impairments.  Edwards v. Barnhart, 314 F.3d 964, 968 (8th Cir. 2003) (claimant's failure to pursue regular medical treatment detracted from credibility.).

The ALJ next noted how the medical record shows an six-month gap in treatment from February until March 2006 undermines Claimant's credibility concerning his disabling impairments.  Edwards v. Barnhart, 314 F.3d 964, 968 (8th Cir. 2003) (claimant's failure to pursue regular medical treatment detracted from credibility).  Such gap suggests that Claimant's subjective complaints of disabling pain are not entirely credible.  See Siemers v. Shalala, 47 F.3d 299, 302 (8th Cir. 1995) (citing Benskin v. Bowen, 830 F.2d 878, 884) (8th Cir. 1987) (holding that the "claimant's failure to seek medical treatment for pain" is a legitimate factor for an ALJ to consider in rejecting a claimant's subjective complaints of pain).  "[T]he failure to seek medical treatment for such a long time during a claimed period of disability tends to indicate tolerable pain."  Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995); see Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 1994) (holding that infrequent treatment is a basis for discounting subjective complaints).   Seeking limited medical treatment is inconsistent with claims of disabling pain. Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991).

The ALJ also properly considered the inconsistencies between Claimant's allegations and his daily activities.  See Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001)("[i]nconsistencies between subjective complaints of pain and daily living patterns diminish credibility"); Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (finding that activities such as driving, shopping,

watching television, and playing cards were inconsistent with the claimant's complaints of disabling pain). He testified that he was an active manager of several rental properties and can lift his grandchildren. He further testified that his activities include visiting family in Louisville, Kentucky, attending church, doing simple household repairs, and going fishing for a short period of time. In an Adult Function Report, he reported his daily activities as reading, paying bills, returning calls, making appointments, scheduling follow-up work, picking up workers, giving workers schedules, overseeing work completed, showing properties, executing leases, doing exit inspections, scheduling repair work and maintenance, collecting rent payments, eating dinner, reading mail, and taking medications. He also cares for his wife who has a brain tumor and takes her to doctors appointments and takes the children to school and attends school meetings and goes to the grocery store. He explained he does not do any house or yard work, because he is "tired from running around with workers for rental property, maintenance and being on feet long time." He reported attending church, overseeing rental work, and using the computer for work as his social activities. Another inconsistency in the record would be Claimant's testimony regarding his need to lie down for one to three hours each day. See Zeiler v. Barnhart, 384 F.3d 932, 936 (8th Cir. 2004) ("[T]here is no medical evidence supporting [the claimant's] claim that she needs to lie down during the day."); Frederickson v. Barnhart, 359 F.3d 972, 977 n.2 (8th Cir. 2004) ("There is no evidence in the record that [the claimant] complained of severe pain to his physicians or that they prescribed that he elevate his foot or lie down daily."). A review of the record shows he never reported such a need during treatment. Contradictions between a claimant's sworn testimony and what he actually told physicians weighs against the claimant's credibility. Karlix v. Barnhart, 457 F.3d 742, 748 (8th Cir. 2006) (finding a lack of credibility

when claimant's testimony regarding drinking consumption conflicted with medical documentation). As such, the undersigned finds that the discrepancies between Claimant's testimony and what he told doctors is supported by substantial evidence.

The ALJ noted Claimant had a very consistent work history, but at the hearing, he testified he stopped working at Proctor and Gamble in 2003 when he was offered an early out. See McCoy v. Astrue, 648 F.3d 605, 614 (8th Cir. 2011) (inconsistencies in the record detract from a claimant's credibility). The Eighth Circuit has found it significant when a claimant leaves work for reasons other than disability. Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005)(claimant stopped working after being fired, not because of her disability); Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 2004) (claimant's leaving work for reasons unrelated to medical condition detracted from credibility); Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) (claimant left his job because the job ended; therefore, not unreasonable for the ALJ to find that this suggested that his impairments were not as severe as he alleged); Weber v. Barnhart, 348 F.3d 723, 725 (8th Cir. 2003) (noting that claimant left her job due to lack of transportation, not due to disability). See also Lindsay v. Astrue, 2009 WL 2382337, at *3 (W.D. Mo. July 30, 2009) ("Plaintiff reported looking for work and contacting temporary agencies. These statements are inconsistent with disability and indicate that Plaintiff did not view his pain as disabling.").

After engaging in a proper credibility analysis, the ALJ incorporated into Claimant's RFC those impairments and restrictions found to be credible. See McGeorge v. Barnhart, 321 F.3d 766, 769 (8th Cir. 2003) (the ALJ "properly limited his RFC determination to only the impairments and limitations he found credible based on his evaluation of the entire record."). The ALJ determined that the medical evidence supported a finding that Claimant could perform

light work with additional limitations as set forth above. The vocational expert testified in response to hypothetical questions, that incorporated the same limitations as the RFC, and opined that such individual could perform work as a hospital products assembler and an electronic equipment final assembly inspector.

As demonstrated above, a review of the ALJ's decision shows the ALJ not to have denied relief solely on the lack of objective medical evidence to support his finding that Claimant is not disabled. Instead, the ALJ considered all the evidence relating to Claimant's subjective complaints, including the various factors as required by Polaski, and determined Claimant's allegations not to be credible. Although the ALJ did not explicitly discuss each Polaski factor in making his credibility determination, a reading of the decision in its entirety shows the ALJ to have acknowledged and considered the factors before discounting Claimant's subjective complaints. See Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). Inasmuch as the ALJ expressly considered Claimant's credibility and noted numerous inconsistencies in the record as a whole, and the ALJ's determination is supported by substantial evidence, such determination should not be disturbed by this Court. Id.; Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996). Because the ALJ gave multiple valid reasons for finding Claimant's subjective complaints not entirely credible, the undersigned defers to the ALJ's credibility findings. See Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (deference given to ALJ's credibility determination when it is supported by good reasons and substantial evidence); Guilliams v. Barnhart, 393 F.3d 798, 801(8th Cir. 2005).

The undersigned finds that the ALJ considered Claimant's subjective complaints on the basis of the entire record before him and set out the inconsistencies detracting from Claimant's

credibility. The ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole. Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). The ALJ pointed out inconsistencies in the record that tended to militate against the Claimant's credibility. See Guilliams, 393 F.3d at 801 (deference to ALJ's credibility determination is warranted if it is supported by good reasons and substantial evidence). Those included the medical evidence of record, his observations at the hearing, the routine and conservative treatment, the gap in treatment, activities of daily living, and inconsistencies in the record . The ALJ's credibility determination is supported by substantial evidence on the record as a whole, and thus the Court is bound by the ALJ's determination. See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006); Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992). Accordingly, the ALJ did not err in discrediting Claimant's subjective complaints of pain. See Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001)(affirming the ALJ's decision that claimant's complaints of pain were not fully credible based on findings, inter alia, that claimant's treatment was not consistent with amount of pain described at hearing, that level of pain described by claimant varied among her medical records with different physicians, and that time between doctor's visits was not indicative of severe pain).

The substantial evidence on the record as a whole supports the ALJ's decision. Where substantial evidence supports the Commissioner's decision, the decision may not be reversed merely because substantial evidence may support a different outcome. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (quoting Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992)).

The undersigned finds that the ALJ's determination is supported by substantial evidence on the record as a whole. "It is not the role of [the reviewing] court to reweigh the evidence

presented to the ALJ or to try the issue in this case de novo." Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. 2009) (citation omitted). "If after review, [the court] find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the denial of benefits." Id. (quoting Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996)). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

**IT IS HEREBY ORDERED** that the decision of the Commissioner be **AFFIRMED**. A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____/s / Terry I. Adelman_____
UNITED STATES MAGISTRATE JUDGE

Dated this __27th__ day of February, 2015.